455 Mass. 783 (2010)                                        783

Town of Canton v. Commissioner of the Massachusetts Highway Department.

Town of Canton vs. Commissioner of the Massachusetts
Highway Department & another.[1]

Suffolk. November 3, 2009. - January 19, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Botsford, & Gants, JJ.

*Massachusetts Environmental Policy Act. Environment,* Environmental impact
report. *Practice, Civil,* Commencement of action.

Discussion of the Massachusetts Environmental Policy Act, G. L. c. 30, §§ 61-
62H. [784-786]
A Superior Court judge properly dismissed as untimely a civil action, in
which a town alleged that a final environmental impact report (FEIR)
regarding a private development project failed to comply with the Mas-
sachusetts Environmental Policy Act, G. L. c. 30, §§ 61-62H, where the
town failed to file the action within the thirty-day limitation set forth in
G. L. c. 30, § 62H, second par., to commence an action challenging the
certification of the FEIR, which began to run when the Department of
Environmental Protection (department) first issued a permit for the project
[788-793], and where the fact that the department did not file notice of its
findings before issuing the permit did not toll the running of the limitations
period [793-795].

Civil action commenced in the Superior Court Department on
October 24, 2008.

A motion to dismiss was heard by *Judith Fabricant,* J.

The Supreme Judicial Court granted applications for direct
appellate review.

*John M. Stevens (Thaddeus A. Heuer* with him) for the plaintiff.

*Douglas H. Wilkins (William L. Lahey* with him) for Doherty
Development Associates, LLC.

*Pierce O. Cray,* Assistant Attorney General *(Julie B. Gold-
man,* Assistant Attorney General, with him) for commissioner of
the Massachusetts Highway Department.

*Heather A. Walsh, Peter Shelley, & Claire Yancey,* for
Conservation Law Foundation, amicus curiae, submitted a brief.

[1]Doherty Development Associates, LLC, doing business as Cabot, Cabot &
Forbes of New England as development agent for CFRI/Doherty Westwood
Station Holdings, LLC, and CFRI/Doherty 105 Rosemont Road, LLC (CCF).

784            455 Mass. 783 (2010)

Town of Canton v. Commissioner of the Massachusetts Highway Department.

*John Pagliaro & Martin J. Newhouse*, for New England Legal Foundation & another, amici curiae, submitted a brief.

IRELAND, J. We granted two applications for direct appellate review in this case to interpret the provision set forth in G. L. c. 30, § 62H, second par., requiring that an action challenging the certification of an environmental impact report (EIR) for a "private" development project "shall commence no later than thirty days following the first issuance of a permit." The town of Canton (town) commenced an action in the Superior Court alleging, inter alia, that a final EIR (FEIR), submitted by the defendant Doherty Development Associates, LLC, doing business as Cabot, Cabot & Forbes of New England as development agent for CFRI/Doherty Westwood Station Holdings, LLC, and CFRI/Doherty 105 Rosemont Road, LLC (CCF), failed to comply with the Massachusetts Environmental Policy Act, G. L. c. 30, §§ 61-62H (MEPA). A Superior Court judge allowed CCF's motion to dismiss the complaint because it was not filed timely; judgment entered dismissing the complaint against all defendants. The town appealed. Because we conclude that the judge did not err in determining that the town's complaint was not timely under the pertinent provisions of G. L. c. 30, § 62H, second par., we affirm.

*The Massachusetts Environmental Policy Act.* We first provide a brief overview of MEPA's statutory scheme.

MEPA's purpose is to protect the environment. *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 614 (1988). Our cases have noted that the "express purpose of [MEPA is] 'to immediately expedite environmental approvals.' " *Hull* v. *Massachusetts Port Auth.*, 441 Mass. 508, 517 (2004), quoting *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 137 (2000) (discussing preamble to 1977 amendment to MEPA).

"General Laws c. 30, § 61, establishes the official policy of environmental protection for the Commonwealth, and §§ 62-62H establish the process by which the 'potential environmental impact of certain projects' is considered." *Hull* v. *Massachusetts Port Auth., supra* at 513, quoting *Enos* v. *Secretary of Envtl. Affairs, supra* at 136. See G. L. c. 30, § 61, second par.[2]

___

[2]General Laws c. 30, § 61, defines "damage to the environment," in relevant part, as "any destruction, damage or impairment, actual or probable, to any of

Any person,[3] corporation, or government entity intending to apply for a permit for a project must notify the Secretary of the Executive Office of Environmental Affairs (Secretary). G. L. c. 30, § 62A. This begins the MEPA process, and agencies[4] are prohibited from granting permits until that process is completed. G. L. c. 30, §§ 62A-62C. See *Enos* v. *Secretary of Envtl. Affairs, supra*; 301 Code Mass. Regs. § 11.12(4) (2008).[5] The Secretary determines whether an EIR must be submitted, as well as its form and content. G. L. c. 30, § 62A. Draft EIRs and FEIRs are submitted to the Secretary, who issues a public notice, and to whom written comments may be submitted. G. L. c. 30, § 62C, second par. At the end of the public review period, the Secretary issues a final statement indicating whether the FEIR complies with MEPA. G. L. c. 30, § 62C, fourth par. If it complies, this certification concludes the MEPA process, but does not indicate final approval or disapproval of the project itself, which is left to the permitting agencies. *Allen* v. *Boston Redevelopment Auth.*, 450 Mass. 242, 247 (2007), citing G. L. c. 30, § 62C, and *Enos* v. *Secretary of Envtl. Affairs, supra* at 137.

In addition, before any agency may take action on a project, it is required to make substantive findings certifying that all feasible measures have been taken to avoid or minimize the environmental impact, if any, of a project. *Enos* v. *Secretary of Envtl. Affairs, supra* at 136, quoting G. L. c. 30, § 61 (§ 61 finding). See note 2, *supra*. To this end, the Secretary supervises the submission of draft and final EIRs to interested agencies. *Enos* v. *Secretary of Envtl. Affairs, supra.*

A FEIR may be challenged under G. L. c. 30, § 62H. At issue here is a provision in the second paragraph of § 62H, which

the natural resources of the commonwealth and shall include but not be limited to air pollution, water pollution . . . [or] excessive noise."

[3] General Laws c. 30, § 62, defines "[p]erson" as "a private person, firm or corporation, or any governmental entity which is not an agency."

[4] An "[a]gency" is defined as "an agency, department, board, commission or authority of the commonwealth, and any authority of any political subdivision which is specifically created as an authority under special or general law." G. L. c. 30, § 62.

[5] On December 26, 2008, 301 Code Mass. Regs. §§ 11.00 were amended. The provisions pertinent to this case have not been affected by the amendment.

provides that, for a "private project," an "action . . . alleging that a [FEIR] fails to comply with [MEPA] shall commence no later than thirty days following the first issuance of a permit" (time limitation). Although § 62H permits a challenge to a FEIR, "[n]either [it] nor the Secretary's regulations confer jurisdiction on the Superior Court. Section 62H . . . simply provides, with respect to actions over which a court has jurisdiction from another source, that such actions must be commenced within a certain period following specified events. It is essentially a statute of limitations." *Cummings* v. *Secretary of Envtl. Affairs, supra* at 613. Jurisdiction is conferred by G. L. c. 214, § 7A, third par., which states, in relevant part:

> "The superior court for the county in which damage to the environment is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought . . . by any political subdivision of the commonwealth, determine whether such damage is occurring or is about to occur . . . provided, however, that the damage . . . constitutes a violation of a statute, ordinance, bylaw or regulation the major purpose of which is to prevent or minimize damage to the environment."

See *Cummings* v. *Secretary of Envtl. Affairs, supra* at 614; G. L. c. 30, § 62H, first par. (time for filing notice of intention to commence action overrides time limits set forth in G. L. c. 214, § 7A). However, no action challenging a FEIR may be commenced unless the party files a notice of intent. G. L. c. 30, § 62H, first par.[6]

*Facts and background.* We summarize the essential, undisputed facts, as found by the judge in her written memorandum of decision and order. CCF proposed a mixed-use development project (project) located in Westwood, on the boundary with the town. One of the primary means of accessing the project site is Dedham Street, which runs through the town. The town's concern is that the use of Dedham Street, including its use through the

---

[6]Under G. L. c. 30, § 62H, first par., a person intending to commence an action "alleging that a final environmental impact report [FEIR] fails to comply with the [statutory] requirements . . . shall first provide notice of intention" within sixty days of the notice of the availability of a FEIR under G. L. c. 30, § 62C.

455 Mass. 783 (2010)                                              787

Town of Canton *v.* Commissioner of the Massachusetts Highway Department.

potential construction of an exit ramp from Interstate Route 95, would increase traffic on the surrounding roads and bridges.

Pursuant to its statutory obligation, in January and September, 2007, CCF submitted, respectively, a draft EIR and a FEIR for its project. The town commented on both EIRs concerning traffic. See G. L. c. 30, § 62C, second par.

On November 1, 2007, the Secretary issued a certificate pursuant to G. L. c. 30, § 62C, that stated that CCF's FEIR complied with MEPA and the related regulations. The certificate set forth conditions that CCF had to meet in order to pursue the project, including acquisition of certain permits and specific traffic mitigation for Dedham Street. At least two of the permits CCF was required to obtain were from the Massachusetts Highway Department (highway department). On November 21, 2007, pursuant to G. L. c. 30, § 62H, first par., the town filed a written notice of its intent to commence an action for judicial review of the certification. See note 6, *supra*. The town cited traffic concerns as the ground for the notice.

In January, 2008, a sewer connection permit was granted to CCF by the Department of Environmental Protection, G. L. c. 30, § 61, but it did not publish notice of this permit or notify the town directly. Despite the notice of its intention to file suit, the town did not file an action in response to this permit. The town states that it does not object to this particular permit.[7]

On or about September 25, 2008, the highway department

---

[7] In December, 2007, before the sewer permit issued, the Department of Environmental Protection had issued a "beneficial use determination" permit. This permit was not listed in the FEIR certification as one CCF was required to obtain. The Department of Environmental Protection also did not publish notice or notify the town directly of this permit. The town took no action and does not have an objection to this permit.

CCF and the Commissioner (commissioner) of the Massachusetts Highway Department (highway department) argue that we should conclude that the "first" permit to which the statute refers is the first permit from among those listed in the FEIR. However, to resolve the issue before us, it is not necessary to address whether, because it was not listed in the FEIR certification, the beneficial use determination permit would have triggered the requisite thirty-day time limitation under G. L. c. 30, § 62H, second par. Therefore, we shall refer to the issuance of the sewer permit as the event from which the statute of limitations began to run. See generally G. L. c. 30, § 62 ("permit" includes "approval or other entitlement for use"); 301 Code Mass. Regs. § 11.02 (defining "[p]ermit"); 310 Code Mass. Regs. § 19.060(1), (5) (2005) (beneficial

788                                 455 Mass. 783 (2010)

Town of Canton *v.* Commissioner of the Massachusetts Highway Department.

issued a § 61 finding concerning traffic and related impacts on
the environment that was based on the certification of CCF's
FEIR, and was favorable to CCF. G. L. c. 30, § 61, first par. In
response, the town filed a complaint on October 24, 2008, seek-
ing judicial review of the certification of the FEIR and of the
highway department's finding.

CCF filed a motion to dismiss or, in the alternative, a motion
for summary judgment, arguing that the thirty-day time limita-
tion for the town to commence an action began running in Janu-
ary, 2008, after the sewer permit issued.

*Discussion.* The town sets forth several arguments to support
its contention that, where there is a private project, the statute's
thirty-day time limitation on commencing an action concerning
the adequacy of the FEIR certificate does not begin to run until
a permit has been issued that pertains to the specific concern of
the party challenging the certification. Accordingly, the town
argues, because it had identified traffic as a concern when it
filed its notice of intent to commence an action, the time limita-
tion did not begin to run until the highway department issued its
§ 61 finding concerning traffic. Therefore, the town contends,
the judge erred in dismissing its complaint. The town also argues
that, should we conclude that it was required to commence an
action within thirty days of the issuance of the sewer permit, we
should nevertheless conclude that the time limit was tolled
because there was no public notice of the permit.[8]

"We interpret a statute according to the intent of the Legis-
lature." *Commissioner of Correction* v. *Superior Court Dep't of
the Trial Court for the County of Worcester,* 446 Mass. 123,
124 (2006). Legislative intent is gleaned from the language of
the statute. *Id.,* quoting *International Fid. Ins. Co.* v. *Wilson,*
387 Mass. 841, 853 (1983). "[A] statute is to be construed as
written, in keeping with its plain meaning." *eVineyard Retail
Sales-Mass., Inc.* v. *Alcoholic Beverages Control Comm'n,* 450
Mass. 825, 831 (2008), quoting *Stop & Shop Supermarket Co.*

use permits); *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.,* 439
Mass. 738, 745 (2003) (permit for portion of project "effectively was issued"
when commissioner gave approval for work to begin).

[8]The town conceded that if the statute is interpreted to bar its challenge to
the FEIR, then it cannot use the statute to challenge the highway department's
§ 61 finding.

455 Mass. 783 (2010)    789

Town of Canton *v.* Commissioner of the Massachusetts Highway Department.

v. *Urstadt Biddle Props., Inc.*, 433 Mass. 285, 289 (2001). Statutory language "is not to be enlarged or limited by construction unless its object and plain meaning require it." *Rambert* v. *Commonwealth*, 389 Mass. 771, 773 (1983). Moreover, "where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *Commissioner of Correction* v. *Superior Court Dep't of the Trial Court for the County of Worcester, supra* at 126, quoting *Commonwealth* v. *Gagnon*, 439 Mass. 826, 833 (2003).

The town argues that the judge's interpretation of the statutory provision is inconsistent with MEPA's scheme which, it contends, is based on two principles, notice and specificity. Certainly, there are parts of MEPA requiring specificity and notice. However, the issue for analysis here is the plain language of the time limitation in § 62H, second par., concerning a private project's FEIR, a provision that lacks a specific notice requirement. The town's argument fails because, as the judge noted, the town does not offer "any theory as to how its reading might be reconciled with the plain language of the statute."

Here, the statutory provision states that to challenge the FEIR of a private project, an action must be commenced "no later than thirty days following the first issuance of a permit." We conclude that the words "first issuance of a permit" refer, at the very least, to the issuance of the first permit issued from those listed in the FEIR as required. See note 7, *supra*. The town's contention that the referenced "first . . . permit" means the first permit issued that pertains to a party's specific concern, would require adding words to the statutory language. We decline to do so where "its object and plain meaning" do not require it. *Rambert* v. *Commonwealth, supra.*

Our interpretation of this provision is consistent with the purpose of the 1977 amendments to MEPA (including the addition of § 62H), which is to reduce "the potential unfairness and social and economic loss that may result from the delay inherent in litigation." *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 140 (2000), quoting *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 617 (1988). See St. 1977, c. 947 (purpose is "to immediately expedite environmental approvals"). We are not persuaded by the town's argument that the Legislature's

purpose was to expedite environmental approvals, but not to expedite litigation. We agree with the Commissioner of the highway department (commissioner) that allowing litigation to delay the approvals is inconsistent with the statute's express purpose of expediting them.

The cases on which the town relies are easily distinguished. As the judge stated, and the town concedes, in neither case was the meaning of timeliness under § 62H at issue. See *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738 (2003); *Enos* v. *Secretary of Envtl. Affairs, supra.*[9]

We also reject the town's argument that if it commenced an action before any environmental harm specific to the town occurred, it would lack standing to sue. Under G. L. c. 214, § 7A,

[9]In *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738 (2003), the plaintiffs timely filed suit challenging certification of a supplemental FEIR for expansion of the Wachusett Mountain ski area following the subsequent § 61 finding and approval for work on ski lifts by the Department of Environmental Management. *Id.* at 743-744. Before addressing the merits of the appeal, the court considered whether the plaintiffs had standing to sue. The court held that the plaintiffs had standing, but vacated the Superior Court's judgment and order that the certification and subsequent finding and order lacked record support. *Id.* at 744-745, 758. The court stated that although it was not required to, it would exercise its discretion to consider another aspect of the project (trails) for which no permit had issued, because it had been fully litigated below and briefed on appeal. *Id.* at 745. The town seizes on the court's language that it was considering the merits because they "will be relitigated as other permits are issued if we do not address them now," *id.*, to argue that the *Sierra Club* plaintiffs could have waited until after the first permit for trail work was issued to challenge the certification. We agree with the judge's rejection of the town's interpretation of this language because "it ignores what actually happened [where] the plaintiff[s] sued within thirty days of the first issuance of a permit," because it would conflict with the plain language of § 62H, second par., and because the court's decision in the *Sierra Club* case to consider other issues that were raised below had the effect of furthering the statutory goal of expediting the approval process. See *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 139 (2000) (litigation could delay approval process and frustrate MEPA's purpose).

In the *Enos* case, the issue was whether the plaintiffs had standing to seek a declaratory judgment against the Secretary of Environmental Affairs (Secretary), who had certified a final supplemental EIR. *Id.* at 133, citing G. L. c. 231A. No permit had issued in the case and the court held that a direct challenge to the Secretary's certificate was improper and would cause delay, frustrating the purpose of the Massachusetts Environmental Policy Act (MEPA). *Id.* at 139 (stating that decision was consistent with *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 617 [1988]). Thus, as the judge stated, "No issue of timeliness was raised or decided in the [*Enos*] case."

third par., a municipality may bring an action, alleging that "damage to the environment is occurring or is about to occur" and "that the damage . . . constitutes a violation of [an environmental] statute [or] regulation." See *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 645 (1974) (under former G. L. c. 214, § 10A, city's standing "expressly established"). See also *Cummings* v. *Secretary of Envtl. Affairs, supra* at 614 (stating that repealed G. L. c. 214, § 10A, is predecessor of § 7A, and "like it in all material respects"). Thus, under the express terms of § 7A, third par., standing does not require a specific injury to the town, but an injury or potential injury to the environment. Further, under MEPA, a municipality would be able to maintain an action against the "agency or authority or private person proposing a project, and not the [Secretary], as 'the person causing or about to cause' environmental damage." *Cummings* v. *Secretary of the Executive Office of Envtl. Affairs, supra* at 616, citing *Warren* v. *Hazardous Waste Facility Site Safety Council*, 392 Mass. 107, 118 (1984). Here, the town could have commenced an action against, at the very least, CCF.

We also disagree with the town's contention that it would have been premature for it to file suit after the sewer permit was issued because environmental harm specific to traffic was not "about to occur" within the meaning of § 7A. Reading § 7A, third par., and § 62H, second par., together and considering MEPA's purpose of expediting environmental approvals, we conclude that the logical interpretation is that the "first issuance of a permit" pursuant to § 62H, second par., marks the time when alleged environmental harm is "about to occur" pursuant to § 7A, third par. See note 7, *supra.* As CCF argues, first issuance of a permit signifies an actual commitment of resources to advance the project to construction, which, in turn, would cause the alleged harm to the environment. Moreover, as the commissioner notes, "Given the unequivocal statutory deadline of [thirty] days from the first permit, a construction of [§] 7A that did not allow suit upon the issuance of that same first permit would . . . create a scenario of 'it's not ripe until it's moot.' " We construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results. See *Attorney Gen.*

v. *School Comm. of Essex*, 387 Mass. 326, 336-337 (1982); *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). See also *School Comm. of Newton* v. *Newton Sch. Custodians Ass'n, Local 454*, 438 Mass. 739, 751 (2003) (absent explicit command to contrary, statutes are construed as harmonious whole and not so that they undercut each other).

This reading is consistent with the *Cummings* case, where the court said that the Superior Court would have jurisdiction under § 7A because an allegation that a "developer or agency proposing a project failed to comply with the procedural requirement of [MEPA]" would qualify as environmental damage that was "about to occur." *Cummings* v. *Secretary of Envtl. Affairs, supra* at 614-615, discussing *Boston* v. *Massachusetts Port Auth., supra* at 646-647. Moreover, § 7A was amended in 1981, after the 1977 amendment to MEPA. See respectively St. 1981, c. 643; St. 1977, c. 947. The 1981 amendment did not change the language of § 7A relevant here; thus, we presume that the Legislature was aware of § 62H and of the interpretation given the statute in 1974, in *Boston* v. *Massachusetts Port Auth., supra*.[10] See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994); *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 240-241 (1982).

Two more recent cases also have suggested, albeit in dicta, such an interpretation of the two statutes. In the *Enos* case, in considering whether the plaintiff property owners had any recourse where they could not maintain a declaratory judgment action against the Secretary's decision not to require an EIR from the town of Plymouth, the court recited a suggestion made by the Secretary that, under § 7A, suit could be brought directly against the town. *Enos* v. *Secretary of Envtl. Affairs*, 432 Mass. 132, 140, 142 (2000). In *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738 (2003), the court addressed the argument that the plaintiffs lacked standing to challenge a submitted EIR. The court relied on the *Enos* case to state " 'an action may lie to seek revocation of the approval of the [FEIR] and the submission of a revised report' after the permit authorizing a project has been approved," and found that when the

---

[10]St. 1981, c. 643, amended the eighth paragraph of G. L. c. 214, § 7A, and grants a court the authority to require a plaintiff to post a surety or cash bond.

455 Mass. 783 (2010)                                      793

Town of Canton v. Commissioner of the Massachusetts Highway Department.

commissioner gave his approval to begin work on a ski lift portion of a project, a permit "effectively was issued." *Id.* at 745, quoting *Enos* v. *Secretary of Envtl. Affairs, supra* at 142.[11] See note 9, *supra.*

We also reject the town's argument that our interpretation of the time limitation on commencing an action would operate solely as a placeholder and make a mockery of the statutory scheme, because the town is already required to file a notice of intent to sue. The Legislature also could have intended such notice to allow negotiations and settlement, because, as the town concedes, the purpose of a notice of intent could be to inform developers about potential concerns. See generally *Daveiga* v. *Boston Pub. Health Comm'n,* 449 Mass. 434, 439 (2007), citing *Gilmore* v. *Commonwealth,* 417 Mass. 718, 721-722 (1994).[12]

The town argues that, in any event, the statute's time limitation was tolled because it never received notice of the sewer permit. To support its argument, the town states that under the Secretary's regulations, the project proponent as well as the permitting agency must each file, with the Secretary, a copy of the § 61 finding and that the Secretary "shall publish notice of . . . the [§] 61 [finding] in the next Environmental Monitor."[13] 301 Code Mass. Regs. § 11.12(5)(e). As discussed, the Department of Environmental Protection did not file the requisite notice of the § 61 finding for the sewer permit.

Although it is true that no permit is supposed to issue before

---

[11]The cases on which the town relies to make its argument about the ripeness of a claim under G. L. c. 214, § 7A, are not apt. In *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs,* 405 Mass. 67, 71-72 (1989), the dismissal of a claim brought under § 7A did not concern ripeness, and the claim that the court deemed to be premature concerned a request for a declaratory judgment. In *Cummings* v. *Secretary of Envtl. Affairs, supra,* the issue before the court was not ripeness but whether an action could be maintained against the Secretary for a determination that a developer did not need to submit an EIR. *Id.* at 615.

[12]The town's reliance on *Hingham* v. *Department of Hous. & Community Dev.,* 451 Mass. 501, 505 (2008), to argue that there could be no controversy before the highway department issued its § 61 finding is misplaced because the *Hingham* case concerned a declaratory judgment and not G. L. c. 214, § 7A, third par.

[13]The Environmental Monitor is an online publication of the MEPA office, published twice monthly.

an agency makes a § 61 finding and files it, it does not follow that the filing and publication notice requirement can be grafted onto the provision in § 62H, second par.[14] As the judge stated, the plain language of the provision at issue here "makes no reference to publication or receipt of notice of a permit . . . [or] to a particular type or permit." Instead, the thirty-day time limitation is tied to the "first issuance of a permit." See *eVineyard Retail Sales-Mass., Inc.* v. *Alcoholic Beverages Control Comm'n*, 450 Mass. 825, 831 (2008) (statute to be construed as written). A literal reading of this provision of § 62H, second par., is particularly appropriate here given that the provision contains three other deadlines for commencing an action, each of which ties its time limitation to notice.[15] Clearly where the Legislature wanted notice in § 62H, second par., it has so provided. See *Roberts* v. *Enterprise Rent-A-Car Co. of Boston*, 438 Mass. 187, 192 (2002); *Tax Collector of N. Reading* v. *Reading*, 366 Mass. 438, 443 (1974). "We do not read into [a] statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include." *Commissioner of Correction* v. *Superior Court Dep't of the Trial Court for the County of Worcester*, 446 Mass. 123, 126 (2006), citing *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999).

The town's argument concerning notice also is undercut by the Secretary's regulations, which do not tie publication in the Environmental Monitor to an action involving a private project. 301 Code Mass. Regs. § 11.14(2)(a), second sentence.[16] The judge did not err in concluding that the town had a burden of

---

[14]At oral argument the commissioner suggested that the failure to file a § 61 finding could be addressed by requesting reconsideration by the Secretary. The commissioner also asserts that, under 301 Code Mass. Regs. § 11.12(6), the Secretary has the sole authority to address agency actions that do not comply with MEPA.

[15]A challenge to a determination that a project requires preparation of an EIR may be commenced no later than either sixty or 120 days after notice of such a determination, depending on whether it is a private or public project; and where there is a public project, an action challenging the propriety of the certification of a FEIR must be commenced no later than 120 days of notice of the availability of the FEIR. G. L. c. 30, § 62H, second par.

[16]By contrast, the first sentence of 301 Code Mass. Regs. § 11.14(2)(a) does mention publication in the Environmental Monitor, i.e., where there is an action or proceeding challenging the Secretary's decision to require an EIR.

inquiry. As she stated, the town should have anticipated the issuance of the sewer permit, which was expressly identified in the FEIR, and should have taken "steps to make sure that it would become aware of it promptly, . . . includ[ing] properly timed public records requests." Indeed, CCF and the commissioner identify a number of ways in which the town could have received notice, including requesting, from CCF or the Department of Environmental Protection, a copy of the § 61 finding that had to precede the issuance of the sewer permit or requesting that the Department of Environmental Protection notify it of the permit itself. See respectively 301 Code Mass. Regs. § 11.12(5)(e); 314 Code Mass. Regs. § 2.06(3)(b) (2009).[17] See generally *Cappuccio* v. *Zoning Bd. of Appeals of Spencer*, 398 Mass. 304, 311, 313 (1986) (where statute provided for notice of public hearing and plaintiffs were so notified and attended hearing, no denial of due process to expect plaintiffs subsequently to take notice of pertinent statutory requirements and to make periodic inquiry concerning status of pending action). Cf. *Kramer* v. *Zoning Bd. of Appeals of Somerville*, 65 Mass. App. Ct. 186, 190, 194-195 (2005) (statute required notice to plaintiff who had no other opportunity to receive notice).[18]

*Conclusion.* For the reasons set forth above, we conclude that the thirty-day limitation for the town to commence an action challenging the certification of the FEIR under G. L. c. 30, § 62H, second par., began to run when the Department of Environmental Protection issued the sewer permit. See note 7, *supra*. We affirm the allowance of CCF's motion to dismiss and the judgment dismissing the town's action against all defendants.

*So ordered.*

[17] On March 20, 2009, 314 Code Mass. Regs. §§ 2.00 were amended. The provisions pertinent to this case have not been affected by the amendment.

[18] In its reply brief, the town argues, for the first time, that should we conclude that it should have commenced its action within thirty days of the sewer permit, we should give our decision only prospective application only. CCF filed a motion to strike (and submitted a surreply brief) in opposition to the town's attempt to raise this issue, pointing out that it was not raised below. We decline to address the town's argument. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See *Travenol Lab., Inc.* v. *Zotal, Ltd.*, 394 Mass. 95, 97 (1985) (declining to consider issue not raised in principal brief); *Kennie* v. *Natural Resource Dep't of Dennis*, 451 Mass. 754, 760 n.13 (2008) (issue not raised below is waived).