466 Mass. 523 (2013)                                      523

Bristol County Mosquito Control District *vs.* State Reclamation and Mosquito Control Board.

COMMISSIONERS OF THE BRISTOL COUNTY MOSQUITO
CONTROL DISTRICT[1] *vs.* STATE RECLAMATION AND MOSQUITO
CONTROL BOARD & another.[2]

Bristol. September 3, 2013. - October 30, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Mosquito Control. Statute,* Construction. *Moot Question.*

This court concluded that G. L. c. 252, § 14D, granted mosquito control
    projects the exclusive authority to set compensation rates for their employees,
    subject to the responsibility of the State Reclamation and Mosquito Control
    Board (board) for approving their annual project budgets; however, in an
    action brought by the commissioners of the Bristol County Mosquito
    Control Project (plaintiffs), in which the plaintiffs sought a declaration that
    § 14D gave them the authority to establish unilaterally its employees'
    compensation rates, the judge erred in granting summary judgment in
    favor of the plaintiffs, where the record, which did not contain information
    about the relationship between the requested salary increases and the
    plaintiffs' over-all budget for the fiscal year in question, was insufficient to
    determine whether the plaintiffs were entitled as matter of law to the relief
    they sought. [528-532]
This court declined to reach either an issue that had been rendered moot dur-
    ing the pendency of an appeal [532-534] or an issue for which resolution
    would be premature [534].

CIVIL ACTION commenced in the Superior Court Department on
October 8, 2009.

The case was heard by *Raymond P. Veary, Jr.,* J., on motions
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Richard E. Burke, Jr.,* for the plaintiffs.

*Amy Spector,* Assistant Attorney General, for the defendants.

BOTSFORD, J. The dispute in this case concerns the authority of
the plaintiff commissioners of the Bristol County Mosquito

[1]Also known as Bristol County Mosquito Control Project.

[2]Treasurer and Receiver General.

Control Project (Bristol project), an entity that operates under G. L. c. 252 and is subject to oversight by the defendant State Reclamation and Mosquito Control Board (board), to establish unilaterally the compensation rates for the individuals who are employed by the Bristol project to carry out its mosquito control programs and functions. At the heart of this dispute is the meaning of G. L. c. 252, § 14D (§ 14D), which was enacted in 2008. The plaintiffs initiated this action in 2009, seeking a declaration that under § 14D, they have the authority to hire and set the compensation rates for the project's employees and to retain legal counsel; they also sought an order of mandamus requiring the defendant Treasurer and Receiver General (Treasurer) to pay those employees the salary increases due to them. On cross-motions for summary judgment, a Superior Court judge allowed the board's motion and dismissed the complaint. We conclude that the summary judgment record is insufficient to determine whether the plaintiffs are entitled as matter of law to the relief they seek. Accordingly, we vacate the judgment of the Superior Court and remand for further proceedings.

*Statutory scheme.* General Laws c. 252 governs the structure and function of the board as well as local mosquito control districts and projects such as the Bristol project. We summarize its relevant provisions.

The board is established by G. L. c. 252, § 2, and, pursuant to that section, exists within the State agency formerly known, and referred to in § 2, as the Department of Food and Agriculture.[3] The board is authorized to make "improvements," including the eradication of mosquitos, to lowland areas. G. L. c. 252, § 1. To carry out its functions, the board may establish local mosquito control districts and projects (collectively, projects) and appoint commissioners to supervise the mosquito

[3]The State Reclamation and Mosquito Control Board (board) has three members, all of whom serve ex officio: an employee of the Department of Environmental Protection designated by its commissioner; an employee of the Department of Food and Agriculture (currently named the Department of Agricultural Resources, see St. 2003, c. 41, § 1 [a] [1]) designated by its commissioner; and a similarly commissioner-designated employee of the agency formerly known as the Department of Environmental Management (currently named the Department of Conservation and Recreation, see St. 2003, c. 41, § 1 [a] [3]). G. L. c. 252, § 2.

eradication programs in the particular locale.[4] G. L. c. 252, §§ 5, 5A. Projects are separately funded by the cities and towns that choose to be members. G. L. c. 252, § 5A. These municipalities are assessed annually by the Treasurer up to the full amount of a project's annual budget. *Id.* Project funds are held by the Treasurer, and are disbursed to the projects with the board's approval. G. L. c. 252, §§ 5A, 14. The Bristol project, formed in 1956 by special act of the Legislature, was created as a mosquito control project "to the same extent as if constituted by the [board] acting under [G. L. c. 252, § 5A]."[5] St. 1956, c. 506, § 1. Thus, like all mosquito control projects, its commissioners are appointed by the board, are authorized to make improvements on behalf of the Bristol project subject to the board's approval, and "may employ suitable persons to perform the work under their direction." G. L. c. 252, § 12.

Under G. L. c. 252, the board exercises control over the several projects' budgets. Specifically, pursuant to G. L. c. 252, § 5A, the board determines the initial funding available to each project and its annual budget as well. The board also is responsible for monitoring every project's expenditure of its budgeted funds. See G. L. c. 252, § 14. Moreover, the board remains accountable to the State comptroller for project budgets. G. L. c. 252, § 5A (to address "timing discrepancies" between revenues and expenses, board may "incur expenses and the comptroller may certify for payments amounts in anticipation of

[4]General Laws c. 252 distinguishes between mosquito control "districts" and "projects" primarily according to the manner in which they are formed. Compare G. L. c. 252, § 5 (if board decides formation of district is necessary to effect mosquito control or other improvements, it "shall issue a certificate appointing three, five or seven district commissioners"), with G. L. c. 252, § 5A (if board determines improvements can be made "without the formation of a district," it may issue "certificate appointing one or more commissioners"). Apart from formation, however, c. 252 generally treats the two types of entities the same, and at times uses the terms "district" and "project" interchangeably. The parties do as well. Districts and projects share the same statutory authority with respect to their principal functions, including the hiring of employees. G. L. c. 252, § 5A (project commissioners "shall have all the powers conferred upon district commissioners under sections twelve and thirteen"). Additionally, G. L. c. 252, § 14D (§ 14D), expressly states that its provisions apply to both districts and projects.

[5]There are currently in the Commonwealth a total of nine mosquito control projects (collectively, projects), including the Bristol project.

receipts," but board must "annually certify to the comptroller that expenditures for the fiscal year do not exceed related assessments").[6]

Section 14D of G. L. c. 252, which is at issue here, was enacted by the Legislature in 2008.[7] See St. 2008, c. 182, § 73. The section provides:

> "Mosquito control projects and mosquito control districts shall have sole authority in all personnel decisions including, but not limited to, the following: the hiring and firing of personnel; the establishment of rates of compensation for personnel representative of the regional economy; and the hiring of appropriate outside professionals deemed necessary to carry out and fulfill statutory obligations."

*Facts.* The record reflects the following facts. On June 29, 2007, the board issued a memorandum announcing a temporary moratorium on salary increases and salary-connected cost of living adjustments (COLAs) for all personnel employed by any project, effective July 1, 2007. Citing "significant discrepancies" in salaries across projects, the memorandum stated that the board and the Department of Agricultural Resources were working on "consistent" and "fair" salary guidelines that were "expected to be completed within the next few months."

On December 27, 2007, the plaintiff commissioners of the Bristol project voted to raise the salaries of four professional and administrative employees, and the project's chair notified the board in writing on the same day that the Bristol project was doing so.[8] The chair's letter stated that establishing the new salary structure was "necessary to maintain the integrity of the [Bristol project] in line with [the board's] approved salaries for . . . other [m]osquito [c]ontrol [projects]."[9] The board rejected the raises, noting that the board's moratorium on salary increases

---

[6]We discuss these statutory provisions in more detail *infra.*

[7]In 2013, the Legislature amended G. L. c. 252, § 5A. St. 2013, c. 38, § 135. See note 15, *infra.*

[8]The proposed salary increases were as follows: for the Bristol project superintendent, from $69,617.60 to $94,000; for its assistant superintendent, from $57,928 to $75,920; for its entomologist, from $47,340.80 to $66,325; and for its administrative assistant, from $42,723.20 to $55,892.

[9]The letter references an "attached excel spreadsheet and 2007 State

was still in effect. It also stated that it had not been "provided any justification [for the increases,] such as changes in job duties and responsibilities or consideration of matters, such as length of service (i.e., seniority)." Finally, the board referenced an ongoing review and reclassification process that it stated was being performed by the State Human Resources Division (HRD): "Once the [b]oard receives recommendations on reclassification of all mosquito control personnel from the [HRD], this will help the [b]oard in its deliberations to consider lifting the temporary moratorium if necessary. . . . [T]he HRD process is an 'objective mechanism for determining salaries' and should result in an equitable structure within and between all mosquito control projects in the [S]tate." Subsequently, on April 14, 2008, the board notified all projects that the salary increase moratorium was still in effect but, in recognition of their "excellent service," it planned to authorize a three per cent "across the board" COLA for all the project's employees in the fiscal year 2009 budget.[10]

Section 14D of G. L. c. 252 became effective on July 1, 2008, and vested "sole authority in all personnel decisions," including compensation rates, in the local projects. Thereafter, the board, acknowledging "concern that conflicts of law may now exist," indicated that requests for salary increases in excess of the recently approved three per cent COLA must be reviewed by legal counsel.

On October 24, 2008, the board revoked the salary and COLA moratorium it had instituted in 2007. In its memorandum to all the mosquito control projects announcing this step, the board stated that the action was "necessary since the anticipated process of reclassification through the [HRD] to standardize and normalize pay rates and salary increases for mosquito control personnel has not yet been resolved." The board stated that it would now consider, on a "case-by-case basis," requests that were accompanied by "appropriate justification" and a demonstration that project budgets would cover the cost of any proposed increases.

Employee payroll entitled State Reclamation Board," but there is no such attachment included in the record before us.

[10]The three per cent cost of living adjustment (COLA) thereafter was included in the fiscal year 2009 budget.

On December 4, 2008, the Bristol project resubmitted the same proposed reclassification and revised salary structure for the four professional and administrative employees that it had submitted in December, 2007; the board again rejected the proposal. In an electronic mail message to the chair of the Bristol project, the board's chair explained, "Unfortunately, we are unable to entertain these requests pending reclassification of all your personnel by HRD. HRD's task is nearing completion. As soon as this occurs, we will take up the matter of your request."

The plaintiffs filed an action in the Superior Court on October 8, 2009. On June 6, 2010, the board approved a five per cent COLA for Bristol project employees, which applied retroactively to January 1, 2010.

*Discussion.* 1. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

2. *Authority to set rates of compensation for Bristol project employees.* The plaintiffs contend that the plain language of § 14D is dispositive and therefore entitles them unilaterally to raise the salaries of the Bristol project's employees without the board's approval. Statutory language "is to be construed as written, in keeping with its plain meaning." *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc.*, 433 Mass. 285, 289 (2001). The pertinent language of § 14D states: "Mosquito control projects and mosquito control districts shall have sole authority in all personnel decisions including, but not limited to, . . . the establishment of rates of compensation for personnel representative of the regional economy." As the plaintiffs argue, the plain meaning of these words is that the plaintiffs have exclusive authority to set the salaries of the Bristol project's staff, and those salary decisions are not themselves subject to board approval.[11]

However, we disagree with the plaintiffs that the analysis

---

[11]There appears to be no dispute that under G. L. c. 252, § 5A, the board sets the compensation rates for the commissioners of the Bristol project.

466 Mass. 523 (2013)                                    529

Bristol County Mosquito Control District vs. State Reclamation and Mosquito Control Board.

ends there. Although statutory language "is to be construed as written, in keeping with its plain meaning," *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc.*, 433 Mass. at 289, the language is not to be read in "isolation," but "[w]hen the meaning of a statute is brought into question, a court properly should read other sections and should construe them together." *LeClair* v. *Norwell*, 430 Mass. 328, 333 (1999), quoting *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 240 (1985). See *Polaroid Corp.* v. *Commissioner of Revenue*, 393 Mass. 490, 497 (1984) ("words of a statute must be construed in association with other statutory language and the general statutory plan"). See also *Cote-Whiteacre* v. *Department of Pub. Health*, 446 Mass. 350, 358-359 (2006) (Spina, J., concurring) (provisions of particular chapter in General Laws are to be construed, where possible, as harmonious whole consistent with legislative purpose, and therefore particular sections in chapter must be read together). Accordingly, we must consider § 14D in relation to the over-all framework governing mosquito control projects under G. L. c. 252. In doing so, we conclude that the exclusive authority of a project, including the Bristol project, to set rates of compensation for its employees is still subject to the board's general statutory authority over mosquito control projects, and in particular the board's specific responsibility for approving their annual budgets.

Under G. L. c. 252, §§ 5 and 5A, the board appoints the commissioners for every project and retains the authority to remove them for cause, and under § 12, the board remains responsible for approving every mosquito control "improvement" undertaken in a particular project and the manner in which it is accomplished. See *id.* (if all statutory requirements in G. L. c. 252, §§ 1 through 7, are met and financing arranged pursuant to G. L. c. 252, § 9 or § 10, "[t]he commissioners shall carry out said improvements in such manner as the board may approve"). But of greater relevance are the provisions in §§ 5A and 14, relating to budgets and expenditures. The board sets each project's initial budget[12] and thereafter is responsible

___

[12]"If the board determines that the proposed improvements should be undertaken . . . it shall notify all persons and bodies politic to be benefited thereby of the estimated expense of constructing the proposed improvements

for approving the project's annual budget.[13] G. L. c. 252, § 5A. Under § 14, the commissioners of every project are to submit monthly accounts and vouchers of the project's expenses, and these expenses are only paid if approved by the board.[14] Further, the statutory command that the board "annually certify to the comptroller that expenditures for the fiscal year do not exceed related assessments," G. L. c. 252, § 5A, second par., is a very clear signal that the ultimate responsibility for each project's over-all expenses lies with the board, not with the projects.[15]

The Legislature enacted § 14D as an outside section to the fiscal year 2009 budget, see St. 2008, c. 182, § 73, and did so without amending G. L. c. 252, § 5A or § 14, or any other provision in that chapter. We find nothing in the language of § 14D that contradicts any of these statutory provisions, and our review of § 14D's legislative history has not suggested otherwise. Accordingly, we will construe § 14D in a manner

. . . . Upon receipt of sums of money sufficient to cover such estimated construction expense . . . the board . . . shall disburse the same on warrants drawn by the board." G. L. c. 252, § 5A.

[13]"[T]he state treasurer shall assess the members of any mosquito control [project] up to one hundred percent of *the amount determined by the board to be necessary during any fiscal year for the expenditures on behalf of said [project] and for the cost of the board*" (emphasis added). G. L. c. 252, § 5A.

[14]Section 14 of G. L. c. 252 provides in pertinent part: "The commissioners shall at least once a month at such time as the board may require submit to it the accounts and vouchers for expenses incurred in meeting the cost of required improvements under [G. L. c. 252, §§ 1-14B]. Such accounts and vouchers shall be inspected by the board and if it approves the same it shall forward them to the county treasurer or to the state treasurer, as the case may be, for payment from any funds which may be available for the purpose."

[15]As mentioned, G. L. c. 252, § 5A, was amended effective July 1, 2013, see St. 2013, c. 38, § 135, to add to the second paragraph of § 5A a new sentence that follows immediately the sentence quoted in the text (relating to annual certification by the board to the State controller). It provides: "The certification shall not give the board the authority to modify the budget approved by a mosquito control project without the mosquito control project's approval." The 2013 amendment came after all the events at issue in this case had occurred, and clearly was not before the Superior Court judge who decided the cross-motions for summary judgment. The assistant attorney general representing the board forwarded to this court a copy of the amendment immediately before the oral argument, but neither party has sought to address its meaning or its particular bearing on the issues raised here. In the circumstances, we decline to consider the 2013 amendment further, except to observe that at least as a definitional matter, there is a distinction between the authority to modify a budget and the authority to approve (or disapprove) it.

that harmonizes its provisions with §§ 5A and 14. The plaintiffs' interpretation of § 14D as giving projects the authority to increase salaries wholly independently of the board's over-all control over annual project budgets would lead to illogical results. See *Canton* v. *Commissioner of the Mass. Highway Dep't*, 455 Mass. 783, 791-792 (2010) ("We construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results"). See also *Rotondi* v. *Contributory Retirement Appeal Bd.*, 463 Mass. 644, 648 (2012), quoting *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001) ("A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result"). Theoretically, a project unilaterally could raise its employees' salaries at any point to levels that exceeded the annual budget approved by the board. Or, even if the salary increases were within the over-all annual budget, they still might be set at levels that could leave insufficient funds for approved project improvements. We decline to assume that in enacting § 14D and choosing to leave the provisions of G. L. c. 252, §§ 5A, 12, and 14, unchanged, the Legislature intended to undermine the board's authority in such a manner. See *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 491 (2009), quoting *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 859 (2005) (court will " 'construe the various provisions of [the] statute in harmony with one another,' recognizing that the Legislature did not intend internal contradiction"). Accordingly, we interpret § 14D to grant mosquito control projects, including the Bristol project, the exclusive authority to set the compensation rates for their employees, but that authority nonetheless is subject to the board's responsibility for approving their annual project budgets. Put another way, projects may set salary levels for their employees at whatever levels they choose, provided that the over-all budget for the project does not exceed the board-approved amount, and does not prevent the project from accomplishing its board-approved improvements.

Given this interpretation of § 14D, the record here contains too many unanswered factual questions to permit the entry of

summary judgment. Although the plaintiffs purport to seek a declaratory judgment regarding the Bristol project's general authority to set the salaries of its employees, specifically at issue are the four salary increases that they sought to put into effect in December, 2007, and again in December, 2008, but that the board rejected. At the time of the Bristol project's 2008 attempt to institute the increases, § 14D was in effect, but the record does not contain any facts about whether implementation of the salary increases would have caused the Bristol project to exceed its annual budget or in any event would have interfered with the Bristol project's ability to complete board-approved mosquito control improvements.[16] Without information about the relationship between the requested salary increases and the Bristol project's over-all budget for that fiscal year, it is not possible to provide a "binding declaration" that will resolve the parties' rights and duties in connection with the "actual controversy" between them. See G. L. c. 231A, § 1. Accordingly, both parties' cross-motions for summary judgment on count 1 of the complaint, seeking a declaratory judgment, must be denied.[17]

3. *Authority to retain legal counsel.* We briefly address the

---

[16]It is also the case that the Bristol project's proposed salary increases did not appear to coincide with the regular annual budget cycle. The parties do not explain or otherwise reconcile this timing issue with their respective interpretations of G. L. c. 252.

[17]Although there is necessary factual information missing, the record does make apparent that this lawsuit has grown out of a longstanding dispute between the Bristol project and the board. Central to this disagreement, and reflected throughout the record, are repeated references by the board and others to efforts to establish a standard, Statewide salary structure for employees of the mosquito control projects, efforts that are described as having been ongoing since 2007, but there is no indication in the record (or in the parties' briefs) that they have been completed. What the record also reveals is that hovering over this dispute, and perhaps closely linked to the topic of a Statewide salary structure, is an unresolved question whether the mosquito control projects are State agencies and, if so, whether this status defines or at least affects the rights of the parties in relation to the authority to set rates of compensation. Materials in the record suggest the board has taken the position that all mosquito control projects are State agencies and therefore must "work within the [S]tate process of establishing . . . salaries," including meeting the requirements of the human resources division, but this issue apparently was not raised by either party before the Superior Court and has not been raised on appeal.

plaintiffs' request for a declaration that they have "the authority to . . . select and retain [their] own legal counsel without being subject to [S]tate statutes and regulations which apply to hiring legal counsel representing the Commonwealth and its agencies and departments."

The board takes the position that the plaintiffs unlawfully retained private counsel to represent the Bristol project in this action, in violation of G. L. c. 30, § 65.[18] This statute sets forth the procedures that State agencies must follow before retaining counsel not already employed by the Commonwealth, and any attorney hired through this process who provides litigation services may "appear in court on behalf of the Commonwealth only after his appointment as a special assistant attorney general." G. L. c. 30, § 65 (*a*) (3). The plaintiffs maintain, however, that § 14D authorizes them to obtain private counsel without first complying with § 65 and related regulations, pointing to the following language: "projects . . . shall have sole authority in all personnel decisions including . . . the hiring of appropriate outside professionals deemed necessary to carry out and fulfill statutory obligations." G. L. c. 252, § 14D. The plaintiffs contend that their private lawyers in this case qualify as "outside profes-

---

[18]General Laws c. 30, § 65, provides in pertinent part:

"(a) A lawyer who is not a regular state employee or person who is compensated through the automated payroll system of the commonwealth shall not provide legal services for the commonwealth, or for any department, agency, board or commission thereof, unless and until:

"(1) the governor's chief legal counsel certifies in writing that no state employee can provide the legal services that the lawyer is to provide; [and]

". . .

"(3) the office of the attorney general has been consulted during the procurement process . . . . If said attorney will be providing litigation services, the attorney general will ensure that said attorney will appear in court on behalf of the commonwealth only after his appointment as a special assistant attorney general.

". . .

"(d) This section shall apply only to legal services provided under contract with the governor or with an officer, department, agency, board or commission serving under the governor or within one of the executive offices headed by a secretary appointed by the governor."

sionals" under the statute, thus granting the plaintiffs "sole discretion" in the outside lawyers' hiring; the board disagrees. In ruling on the parties' cross-motions for summary judgment and the plaintiffs' motion for reconsideration, the motion judge declined to reach this issue. We do as well, but for a different reason.

On February 22, 2011, the parties entered into a joint stipulation stating that plaintiffs' counsel have received appointments as special assistant attorneys general, "retroactively effective to the commencement of this litigation," rendering the parties' dispute over the applicability of G. L. c. 30, § 65, "*moot*" (emphasis in original). We agree. "[D]eclaratory relief is reserved for real controversies and is not a vehicle for resolving abstract, hypothetical, or otherwise moot questions." *Libertarian Ass'n of Mass.* v. *Secretary of the Commonwealth*, 462 Mass. 538, 547 (2012), citing *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292-293 (1977). See G. L. c. 231A, § 1. We decline to address the issue further.

4. *Request for mandamus relief.* Count 2 of the plaintiffs' complaint seeks mandamus relief against the Treasurer and, in particular, an order requiring him to pay the salary increases to the Bristol project's employees that the plaintiffs claim they are authorized to institute. Because the record does not permit resolution of count 1 of the complaint at this juncture, any consideration of count 2 is premature.

*Conclusion.* The judgment of the Superior Court is vacated, and the case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*