CAPUTO vs. MOULTON, 102 Mass. App. Ct. 251

 
 LOUIS M. CAPUTO, JR., trustee, [Note 1] & another [Note 2] vs. KAREN M. MOULTON & others. [Note 3]

102 Mass. App. Ct. 251
 October 17, 2022 - January 30, 2023

Court Below: Superior Court, Essex County
Present: Meade, Wolohojian, & Singh, JJ.

 

No. 21-P-439.

Practice, Civil, Declaratory proceeding, Motion to dismiss, Standing, Moot case, Attorney's fees. Trust, Removal of trustee, Construction, Attorney's fees.

In the circumstances of a declaratory judgment action brought by the trustee and successor trustee (plaintiffs) of an irrevocable insurance trust (trust) after a subset of the permissible income beneficiaries purportedly exercised their authority under the trust to remove the plaintiffs and to appoint a successor trustee, this court concluded that the successor trustee, who never assumed his role, lacked standing to maintain the action, but that the trustee had standing by virtue of his interest in knowing whether he remained liable as trustee and, if so, over what res his obligations as trustee extended [258-260]; at any rate, where all the permissible income beneficiaries of the trust subsequently exercised their authority to remove the plaintiffs as trustees, the question of the effectiveness of the earlier removals was rendered moot [260-261]; accordingly, this court affirmed the dismissal of the complaint but remanded the matter for further adjudication of the plaintiffs' postjudgment motion for attorney's fees and expenses (i.e., the reasonableness of the fee request in connection with seeking a declaration concerning the effectiveness of the earlier removals) [261-263].

Civil action commenced in the Probate and Family Court Department on May 30, 2019. 

 Following transfer to the Superior Court Department, a motion to dismiss was heard by Janice W. Howe, J.; entry of judgment 

 Page 252 

was ordered by James F. Lang, J.; and a motion for attorney's fees was considered by John T. Lu, J.

 Robert R. Berluti for the plaintiffs.

 India L. Minchoff (Emma S. Funnell also present) for Karen M. Moulton & others.

 Stephen J. Kuzma, for Denise J. McCarthy, was present but did not argue.

 WOLOHOJIAN, J. Louis M. Caputo (Louis) and his son, Michael L. Caputo (Michael), were named, respectively, as trustee and successor trustee of an irrevocable insurance trust (trust). In their capacity as trustees, they brought this declaratory judgment action after a subset of the permissible income beneficiaries purportedly exercised their authority under the trust to remove Louis and Michael as trustees (the 2019 removals) and to appoint a successor trustee, People's United Bank, N.A. (People's United). Specifically, Louis and Michael sought declarations that (1) the 2019 removals were ineffective and Louis remained trustee, (2) People's United was not successor trustee, (3) the five beneficiaries who acted in 2019 violated the no contest clause of the trust, and (4) the trust was required to reimburse Louis and Michael for attorney's fees and expenses associated with pursuing this litigation. [Note 4] While the case was pending, all twelve of the permissible income beneficiaries of the trust exercised their authority to remove Louis and Michael as trustees (2020 removals). [Note 5]

 What is primarily before us in this appeal are two threshold questions. First is whether Louis and Michael, as trustee and successor trustee, have standing. Second is whether the action -- which sought declaratory relief only with respect to the 2019 removals -- became moot by virtue of the 2020 removals. We conclude that Michael, who never assumed his role as successor trustee, lacks standing, but that Louis has standing by virtue of his interest in knowing whether he remained liable as trustee after the 2019 removals and, if so, over what res his obligations as trustee extended. We also conclude that the 2020 removals rendered moot the question of the effectiveness of the 2019 removals. We accordingly affirm the dismissal of the second amended 

 Page 253 

complaint except with respect to its request for a declaration regarding reimbursement of legal fees and litigation expenses reasonably incurred by Louis to pursue the question of the effectiveness of the 2019 removals. A remand is necessary to adjudicate the reasonableness of any fee award.

 Preliminary matters. At the outset, we must establish the correct lens through which to view the issues raised on appeal. The defendants moved to dismiss the second amended complaint, pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), on the ground that the controversy was moot. In addition, for the first time on appeal, the defendants argue that the plaintiffs lack standing. [Note 6] Because mootness and standing in this case are questions of law, our review is de novo. See Indeck Maine Energy, LLC v. Commissioner of Energy Resources, 454 Mass. 511, 516 (2009). Whether considering standing or mootness, we "may consider affidavits and other matter outside the face of the complaint." Ginther v. Commissioner of Ins., 427 Mass. 319, 322 n.6 (1998). See Abate v. Fremont Inv. & Loan, 470 Mass. 821, 823 n.5 (2015).

 Here, both sides attached various documents to their motion papers: the defendants attached a copy of the trust instrument and the 2020 removal documents; the plaintiffs likewise attached the trust instrument, and (among other things) the 2019 removal documents. The better course would have been to submit such extra-complaint materials as attachments to an affidavit. However, the fact that neither side did so does not preclude consideration of the documents in the circumstances here. See Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 710-711 (2004). To begin with, neither side raises the absence of affidavits. More importantly, there is no factual dispute concerning the documents or their contents; instead, the issues presented turn on those documents' legal significance. Accordingly, like the judge, we draw the facts from the documents attached to the parties' motion papers below, as well as from the allegations of the second amended complaint, which we read favorably to the plaintiffs. See Porter v. Board of Appeal of Boston, 99 Mass. App. Ct. 240, 243 (2021).

 Background. Marjorie W. Sloper created the trust in 1997, which was amended and restated in March 2015. Upon Sloper's 

 Page 254 

death, the trust was to be funded with the proceeds of a life insurance policy for the benefit of Sloper's five nieces and nephews together with their issue, who were collectively the trust's beneficiaries. Upon Sloper's death, the trustee was required to divide the trust into separate equal shares for each niece or nephew (or, in the case of a deceased niece or nephew, their issue) and net income and principal in any amount from each share could be distributed to that niece or nephew and his or her issue. The trustee had discretion to distribute any, all, or none of the income and principal from each share. [Note 7] Louis, who had been Sloper's long-time financial planner, was named trustee, and his son Michael was named successor trustee. 

 Article VIII (11) of the trust authorized a majority of the permissible income beneficiaries of each share to remove a trustee for "reasonable cause," which the trust defined to encompass a fairly broad set of reasons we have set out in the margin. [Note 8] The trust also permitted a majority of the permissible income beneficiaries of each trust share over the age of thirty-five to "remove a Trustee for no cause (but not more than one within a twenty-four (24) month period)."

 Sloper died in October 2015. Over the next few years, her five nieces and nephews became dissatisfied with Louis's performance as trustee. Specifically, they contended that Louis had failed to provide accountings, and that Louis had charged excessive 

 Page 255 

fees. In March 2019, all five of the nieces and nephews executed notices of removal purporting to remove Louis as trustee for reasonable cause and Michael as successor trustee for no cause. The five nieces and nephews also executed documents appointing People's United as successor trustee. Although the 2019 removals were initiated by all five of Sloper's nieces and nephews, and those five constituted all of the first-generation beneficiaries of each trust share, those five did not constitute a majority of all permissible income beneficiaries, a class that also included their seven children. [Note 9]

 In response to the 2019 removals, the plaintiffs brought the underlying declaratory judgment action in May 2019. In broad strokes, the plaintiffs contended that the 2019 removals were ineffective because, among other things, they were not made by a majority of the permissible income beneficiaries and because there was no "reasonable cause" to remove Louis.

 In March 2020, the five nieces and nephews, now joined by seven of their children, again purported to exercise their power under article VIII to remove Louis as trustee for cause and Michael as successor trustee for no cause. As to Louis, the 2020 instruments of removal stated that he had failed to establish separate trust shares as required by the trust and identified two specific bases for his removal. First, relying on article VIII (11) (d) (xi) of the trust, the beneficiaries asserted that Louis had caused unreasonable conflict with the beneficiaries by disputing the 2019 removals and by asserting that he remained trustee. Second, relying on article VIII (11) (d) (xii) of the trust, the beneficiaries asserted that removal was in their best interest. As to Michael, the 2020 instruments of removal stated that he was being removed prophylactically in the event that he now or in the future asserted that he was successor trustee. [Note 10] Michael had not responded to the 

 Page 256 

beneficiaries' earlier inquiry whether he intended to assert his appointment as successor trustee should his father be removed.

 Thereafter, the plaintiffs moved for leave to file a second amended complaint, which is the operative pleading for our purposes here. [Note 11] The second amended complaint alleged that the 2019 removals were ineffective because (1) the five beneficiaries who executed the removal notices did not constitute a majority of the permissible income beneficiaries; (2) the removal notices did not specify the reasons for removal; (3) Louis and Michael did not receive written notice of removal; (4) there was no reasonable cause to remove Louis as trustee; and (5) without reasonable cause to remove Louis, Michael could not be removed as successor trustee because only one such removal was permitted during any twenty-four month period. Based on these alleged defects in the 2019 removals, the second amended complaint sought the following declarations as relief:

the five beneficiaries who acted in 2019 did not constitute the majority required to remove Louis for reasonable cause;

the beneficiaries did not have reasonable cause to remove Louis;

without grounds to remove Louis, the trust instrument did not permit removal of both Louis and Michael without cause;

Louis remained trustee;

the five beneficiaries who acted in 2019 violated the no contest provision of the trust; and

the trust authorized reimbursement from the trust to Louis and Michael for their litigation fees and expenses. [Note 12]

 Page 257 

The second amended complaint made no mention of the 2020 removals, nor did it contain any allegation that the 2020 removals were ineffective.

 The beneficiaries then moved to dismiss the second amended complaint, pursuant to Mass. R. Civ. P. 12 (b) (1), because the relief sought was moot. In essence, the beneficiaries contended that, even assuming some defect in the 2019 removals, no relief was available once the 2020 removals were effectuated. During argument on the motion, the plaintiffs confirmed that they were not contesting the validity of the 2020 removals. The judge allowed the motion to dismiss, although she did not rely on mootness; the judge instead looked to the 2020 removals to determine whether Louis and Michael had been properly removed. The judge then determined that they had been on the ground that the beneficiaries' determination of whether removal of a trustee was in their best interest was not open to judicial review. [Note 13] She accordingly concluded that Louis had been properly removed for reasonable cause in 2020, and that Michael had been properly removed without cause at the same time. Accordingly, she dismissed the second amended complaint on the ground that the plaintiffs were not entitled to the relief sought.

 Thereafter, the plaintiffs filed a postjudgment motion seeking to recover their attorney's fees and expenses. The motion was based on two provisions of the trust. First, the plaintiffs relied on article IX (24), which authorized the trustee to "employ and compensate . . . attorneys-at-law . . . deemed by the Trustee needful for the proper administration of the Trust Estate." Second, the plaintiffs based their request on article XVI (3), which authorized the trustee to defend against "any contest or other attack of any nature on this Trust Agreement or any of its provisions" and provided that the costs of such defense would be deducted from the challenging beneficiary's share. A different judge (fee judge) denied the motion for fees.

 Page 258 

 This appeal followed, in which Louis and Michael challenge both the dismissal of the second amended complaint and the denial of their postjudgment motion for attorney's fees. [Note 14]

 Discussion. 1. Standing. The declaratory judgment statute, "G. L. c. 231A[,] does not provide an independent statutory basis for standing." Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000). See Pratt v. Boston, 396 Mass. 37, 42-43 (1985). Instead, to establish standing, plaintiffs must show that they have a definite interest in the matter being litigated "such that their 'rights will be significantly affected by a resolution of the contested point.'" Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 128-129 (2018), quoting HSBC Bank USA, N.A. v. Matt, 464 Mass. 193, 200 (2013). See Bonan v. Boston, 398 Mass. 315, 320 (1986).

 Our cases have not previously dealt with the situation presented here, namely whether a trustee has standing to bring an action seeking a declaration that his removal was ineffective under the terms of the trust. To answer this question we turn first to some general propositions concerning trusteeship. Appointment as a trustee is neither an entitlement nor an expectancy, but rather a bundle of responsibilities and duties running to the beneficiaries with respect to the trust res. See G. L. c. 203E, §§ 801-817. Appointment as a trustee is also not permanent. A person may decline to accept appointment as a trustee, G. L. c. 203E, § 701; may in certain circumstances be removed as trustee by a judge, either after a request by the beneficiaries or on the judge's own initiative, G. L. c. 203E, § 706; or may resign, G. L. c. 203E, § 705. A trustee does not have a property or pecuniary interest in his appointment as trustee apart from the pecuniary interest in the compensation to which he may be entitled for his services while trustee. See G. L. c. 203E, § 708. Likewise, a trustee does not have a personal, pecuniary, or beneficial interest in the trust res. See Ballard v. Maguire, 317 Mass. 130, 132 (1944); G. L. c. 203E, § 507 (trust res cannot be used to satisfy personal obligations of trustee). Instead, the trustee holds legal title to the trust res, while the beneficiaries hold the beneficial interest. See 90 C.J.S. Trusts § 249 (2020). In short, a trustee has many duties, responsibilities, and liabilities, but few rights beyond being fairly compensated for his services.

 Page 259 

 With these principles in mind, we turn to examining whether the plaintiffs have standing to pursue the relief sought in the second amended complaint. To begin with, Michael -- who never indicated an acceptance of his appointment as successor trustee or otherwise stepped, or attempted to step, into that role -- has no standing to pursue any of the relief sought. His interest in the trust or its administration was at all times inchoate.

 Louis, by contrast, was appointed trustee by Sloper and stood in that capacity from March 15, 2015, the date of execution of the amended and restated trust, onwards. [Note 15] Although Louis's tenure as trustee was at all times subject to the removal provisions of the trust and he had no legal entitlement to, or expectancy in, his continuing appointment as trustee, from the date of his appointment forward, Louis bore all the duties and responsibilities of a trustee, as enumerated in the trust. Those duties and responsibilities -- and the exposure to liability that would result in the event he committed a breach of them -- continued until Louis was properly removed by the beneficiaries under article VIII, or by a court, or by virtue of his own resignation. For this reason, Louis had a cognizable interest in knowing whether the 2019 removals were effective, and that interest gave him standing to seek a declaration on that subject. See Libertarian Ass'n of Mass. v. Secretary of the Commonwealth, 462 Mass. 538, 547 (2012), quoting G. L. c. 231A, § 9 ("declaratory judgment act must be 'liberally construed,' so as to effectuate its remedial goals of 'remov[ing], and . . . afford[ing] relief from, uncertainty and insecurity with regard to rights [and] duties'").

 For similar reasons, we conclude that Louis had standing to pursue a declaration that the five nieces and nephews triggered the no contest clause when they executed the 2019 removal documents. [Note 16] Although Louis himself had no beneficial interest in the trust res, nor was he seeking a declaration concerning the trust 

 Page 260 

res on behalf of those having an interest in it, [Note 17] he did have an interest in knowing whether the res remained in the trust, and whether his duties as trustee continued with respect to it or whether the res instead belonged to Sloper's estate because the nieces and nephews had forfeited their shares of the trust res under the no contest clause of the trust.

 Finally, it requires no discussion to conclude that Louis had a pecuniary interest in whether the terms of the trust entitled him to reimbursement for the fees and expenses he incurred in connection with this litigation.

 2. Mootness. As we have noted, the plaintiffs do not challenge the effectiveness of the 2020 removals, in terms of either the mechanics by which they were effectuated or the grounds on which they were based. As a result, even assuming that the 2019 removals were ineffective, much of the relief sought in the second amended complaint became moot when the beneficiaries again acted in 2020. Specifically, at that point, a judge could no longer declare that Louis remained trustee or grant any of the relief that hinged on such a declaration. See Lawyers' Comm. for Civ. Rights & Economic Justice v. Court Adm'r of the Trial Court, 478 Mass. 1010, 1011 (2017).

 However, the 2020 removals did not render moot the question whether the five nieces and nephews had triggered the no contest clause in 2019. That question instead became moot for another reason. If, as the plaintiffs contend, the 2019 removals triggered the no contest clause, then all five trust shares would devolve to Sloper's estate, see note 16, supra, where Sloper's brother was the only heir at law. Sloper's brother, whom the plaintiffs named as a defendant in the second amended complaint, also moved to dismiss on mootness grounds. In particular, Sloper's brother argued that the controversy regarding the no contest clause was moot because "if he received the Trust estate, he would disburse the funds to the Beneficiaries in the proportions set forth in the Trust instrument, the Beneficiaries will receive the assets of the Trust under either outcome with the only variant being whether the funds will be administered by [Denise J.] McCarthy as Trustee or provided to them in an outright distribution." See note 10, 

 Page 261 

supra. This assertion (which the defendants also make on appeal) was repeated during the motion hearing, and the plaintiffs did not challenge it then, nor do they challenge it now. Given this unchallenged representation, the question whether the five beneficiaries forfeited their trust shares by virtue of the 2019 removals is essentially one of academic interest. "[D]eclaratory relief is reserved for real controversies and is not a vehicle for resolving abstract, hypothetical, or otherwise moot questions." Commissioners of the Bristol County Mosquito Control Dist. v. State Reclamation & Mosquito Control Bd., 466 Mass. 523, 534 (2013), quoting Libertarian Ass'n of Mass., 462 Mass. at 547.

 Accordingly, the only relief that was not rendered moot by the 2020 removals was the question whether Louis was entitled, under the terms of the trust, to reimbursement for reasonable litigation fees and expenses associated with obtaining a judicial declaration regarding the 2019 removals.

 3. Entitlement to litigation fees and expenses. After the dismissal of the second amended complaint, the plaintiffs moved for an award of their fees and expenses, to be paid from the trust. They relied on two provisions of the trust: article IX (24) and article XVI (3). [Note 18] The defendants opposed the motion on the grounds that (1) it was not based on any legal authority, (2) it was not based on an accurate recitation of the facts, (3) the plaintiffs engaged in hostile and aggressive litigation tactics designed to inflate legal expenses to the detriment of the trust and the beneficiaries, (4) the motion was filed in reaction to the defendants' motion for sanctions, (5) specific billing records showed "churning" in the case, (6) the over-all amount of fees sought ($310,000) was unreasonable, and (7) fees were not authorized under the language of the trust. The fee judge denied the motion for fees and costs in a margin endorsement, explaining only that the motion was "denied for the reasons stated in the [defendants'] oppositions."

 Article XVI (3) [Note 19] empowers the trustee to defend, at the expense of the trust estate, against "any contest or other attack of 

 Page 262 

any nature on this Trust Agreement or any of its provisions." The problem for Louis and Michael is that the beneficiaries did not launch an attack against the trust agreement or any of its provisions; instead, the beneficiaries only attempted to exercise their removal authority under article VIII of the trust. As a result, the underlying declaratory judgment action was not brought in defense of an attack on the provisions of the trust, and article XVI (3) did not entitle Louis and Michael to reimbursement for their litigation fees and expenses in connection with this litigation.

 Article IX (24) [Note 20] empowers the trustee to retain and compensate attorneys whom the trustee deems "needful for the proper administration of the Trust Estate." As we have already explained, the 2019 removals did not appear to have been taken by the requisite majority of permissible income beneficiaries. If this rendered the 2019 removals ineffective, then Louis remained trustee, and his responsibilities to administer the estate for the benefit of the beneficiaries continued. Accordingly, Louis could have reasonably deemed that a declaration concerning the validity of the 2019 removals and whether they triggered the no contest provision was needed for the proper administration of the estate.

 Although article IX (24) empowered Louis to retain counsel to seek a declaration concerning the effectiveness of the 2019 removals and whether the no contest provision had been triggered, this did not give him carte blanche. Only reasonable attorney's fees and litigation expenses could be charged to the trust estate. In this context, the reasonableness of the fees includes consideration of the size of the trust estate and whether the fees unduly dissipated the trust estate, as well as the time spent, the amount in dispute, the importance of the matter involved, and the results achieved. See Brady v. Citizens Union Sav. Bank, 91 Mass. App. Ct. 160, 162-163 (2017).

 Because the fee judge did not explain his decision, we are 

 Page 263 

unable to tell whether the judge denied the fee motion because he did not think the trust authorized reimbursement or because he concluded that the amount was unreasonable. If the judge denied fees based on his interpretation of the trust, we have concluded that that was incorrect. But if instead the judge based his decision on the fact that the amount sought was unreasonable, some analysis of the pertinent factors was required before denying the amount in its entirety. We accordingly remand to permit the judge to consider the reasonableness of the fee request in connection with seeking a declaration concerning the effectiveness of the 2019 removals and whether the no contest provision had been triggered. In addition to the factors listed above, the judge may, and should, consider whether the litigation was conducted efficiently and in good faith, that the crux of the litigation became moot in 2020, that Michael did not have standing, and to what degree the fees incurred promoted the interests of the trust estate. [Note 21]

 Conclusion. We affirm the dismissal of the second amended complaint, except to the extent it sought an award of reasonable attorney's fees and expenses. We vacate the order dated January 13, 2021, denying the plaintiffs' postjudgment motion for attorney's fees and expenses, and remand for further consideration of that motion in light of this decision. We note that since the fee judge has retired, the matter will be heard by a different judge. Additional evidence may be taken as the judge deems necessary.

 So ordered.

FOOTNOTES
[Note 1] Of the Marjorie W. Sloper 1997 Irrevocable Insurance Trust. 

[Note 2] Michael L. Caputo, successor trustee of the Marjorie W. Sloper 1997 Irrevocable Insurance Trust. 

[Note 3] Denise J. McCarthy, Joshua E. Moulton, Michael P. Moulton, Noelle M. Ohlson, Michelle L. Palmer, Jennifer L. Percoco, Charles N. Waitt, Joseph C. Waitt, Thomas E. Waitt, Thomas J. Waitt, Jason M. Webber, Justin P. Webber, Robert Webber, and People's United Bank, N.A. People's United Bank, N.A., does not advance any arguments in this appeal. A suggestion of death was filed for Robert Webber in Superior Court. 

[Note 4] The requested relief enumerated here comes from the second amended complaint, which is the pleading relevant to this appeal. 

[Note 5] The parties proceed on the footing that the twelve beneficiaries who acted in 2020 constituted "all" of the beneficiaries of the trust at that time, although it appears that there were additional minors who qualified as income beneficiaries. See note 9, infra. 

[Note 6] Because standing goes to subject matter jurisdiction, it may be raised for the first time on appeal. See Sudbury v. Massachusetts Bay Transp. Auth., 485 Mass. 774, 779 (2020). 

[Note 7] We do not set out the further details of how the shares were to be handled as those terms are not pertinent to the issues on appeal. 

[Note 8] The trust defined reasonable cause for removal of a trustee as follows: "(i) incapacity or disability of Trustee; (ii) the willful or negligent management by Trustee of the trust's assets; (iii) the abuse or abandonment of, or inattention to, the trust or its assets by Trustee; (iv) federal or state charge against Trustee involving the commission of a felony or serious misdemeanor; (v) the act of stealing, dishonesty, fraud, embezzlement, moral turpitude, or moral degeneration by Trustee; (vi) Trustee's poor physical, mental or emotional health which causes Trustee to be unable to devote sufficient time to administer the trust; (vii) Trustee's failure to comply with a written fee agreement or other legally enforceable written agreement affecting the operation of the trust; (viii) the removal of all current income beneficiaries from the state where a corporate or professional Trustee is licensed to conduct business as a corporate or professional Trustee; (ix) a demand from Trustee for unreasonable compensation for such Trustee's service; (x) unreasonable lack of communication between Trustee and the trust's beneficiaries cause[d] by Trustee; (xi) unreasonable conflict between Trustee and the trust's beneficiaries caused by Trustee; (xii) where it would appear to be in the best interests of the current trust beneficiaries to have an Independent Trustee serve as sole Trustee; and (xiii) any other reason for which a state court of competent jurisdiction would remove a trustee." 

[Note 9] The second amended complaint alleges that there are, in addition, three grandnieces and grandnephews who have not reached the age of majority. The plaintiffs did not name these minors as parties, nor do they contend that the minors should be included in calculating whether a majority of beneficiaries participated in the removals. In any event, even if those minor beneficiaries were included in the calculation, it would not affect the analysis. The plaintiffs make no claim that the minors should have participated in either the 2019 or 2020 removals. 

[Note 10] At the same time, the beneficiaries removed People's United as trustee pursuant to article VIII (d) (xii) on the ground that it was in their best interest to have Denise J. McCarthy (apparently a disinterested attorney) serve as sole trustee. The beneficiaries had previously appointed McCarthy as cotrustee with People's United, effective January 24, 2020. McCarthy had established separate shares for the beneficiaries on February 1, 2020. The plaintiffs raise no issue concerning the appointment of McCarthy. 

[Note 11] The purpose of the first amended complaint was to add a request that the court declare that the five beneficiaries who were involved in the 2019 removals had violated the no contest provision of the trust. The motion to amend was allowed with the endorsement that Sloper's heir at law (her brother) should be added as a party defendant. The second amended complaint added Denise J. McCarthy, see note 10, supra, and Sloper's brother as interested parties. 

[Note 12] The second amended complaint also sought a declaration that People's United was not successor trustee. By this time, however, People's United had already been removed as successor trustee, see note 10, supra, and this aspect of the relief sought was undisputedly moot. 

[Note 13] The judge was of the view that, because the trust authorized the beneficiaries to remove trustees without seeking judicial approval or involvement beforehand, the removal was not open to judicial review afterwards. This was incorrect. Although the beneficiaries were not required to come to court before removing a trustee within the terms of the trust, this does not mean that their action, once taken, was insulated from judicial review. If the beneficiaries had wished to insulate themselves from post hoc judicial review, the proper course would have been for them to seek pre hoc judicial guidance, either in the form of a declaratory judgment action or a complaint for instructions. 

[Note 14] The beneficiaries cross-appealed from an order dated January 13, 2021, denying their motion for sanctions. That cross appeal has been voluntarily dismissed and is not before us. 

[Note 15] Sloper, as grantor, signed the amended and restated trust instrument, as did Louis in his capacity as trustee. 

[Note 16] The no contest provision of the trust provided that "[i]f any beneficiary under this Trust Agreement, singly or in conjunction with any other person or persons, directly or indirectly, . . . unsuccessfully seeks the removal of any person acting as Trustee . . . , then and in that event that person's right to take any interest given to him or her by or under this Trust Agreement shall be determined as it would have been determined if the person had predeceased the execution of this instrument without surviving issue." Although we need not, and do not, reach the issue, it appears that the consequence of the no contest clause would be to redirect the share of each contesting niece and nephew into Sloper's estate. Since all five nieces and nephews participated in the 2019 removals, all five shares would have been affected. 

[Note 17] Contrast Old Colony Trust Co. v. Wood, 321 Mass. 519, 526 (1947) (trustee had standing to sue for return of property to trust on behalf of those having interest in trust res). 

[Note 18] On appeal, the plaintiffs rely on two additional provisions of the trust: article VIII (3) and article IX (2). However, any argument based on those provisions is waived because it was not raised below. See Gutierrez v. Massachusetts Bay Transp. Auth., 442 Mass. 1041, 1042 (2004). 

[Note 19] "The Trustee is hereby authorized to defend, at the expense of the estate, any contest or other attack of any nature on this Trust Agreement or any of its provisions. All such costs of defense of such action shall be charged to and deducted from the share, if any, of that challenging beneficiary, regardless of whether the challenging beneficiary was successful or not in his or her challenge. If there is no such share, then the defense of this action shall be treated as an administrative expense of the estate." 

[Note 20] The trustee is empowered "[t]o employ and compensate . . . attorneys-at-law . . . deemed by the Trustee needful for the proper administration of the Trust Estate, and to do so without liability for any neglect, omission, misconduct, or default of any such agent or professional representative provided such person was selected and retained with reasonable care. A Trustee may employ any firm with which the Trustee is affiliated to provide services for and on behalf of the Trust for the proper administration of the Trust." 

[Note 21] We deny the defendants' request for fees and costs on appeal. We also deny the plaintiffs' request for fees and costs on appeal, all of which were incurred after the point where the substantive issues presented in the case became moot and provided no benefit to the trust estate. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.